The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Mary Hoag and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Liberty Mutual Insurance Company is the carrier on the risk.
4. Plaintiff's average weekly wage at all relevant times was $240.00, yielding a compensation rate of $160.01.
5. On 26 April 1993, a Form 19 was submitted to the Industrial Commission by defendant-employer Stanley Furniture Company, acknowledging plaintiff's report of injuries. Subsequently, on 25 July 1994, plaintiff filed a Form 18, Notice of Accident with the Industrial Commission.
6. By Form 21 dated 16 February 1994, defendants accepted liability for plaintiff's fractured left thumb and agreed to pay compensation at the rate of $160.01 per week beginning 10 February 1994 and continuing for necessary weeks.
7. An Order adding Mundy's Lumber Veneer and Liberty Mutual Insurance Company as additional defendants was filed on 16 June 1995 by (then) Chief Deputy Commissioner William L. Haigh.
8. An Order dismissing Mundy's Lumber Veneer and Liberty Mutual Insurance Company as a party to this action was filed 3 February 1997.
9. The parties submitted a bound packet of medical records which was stipulated into the record as follows:
a. Records of Dr. Peter A. DeGregorio (12 pp.)
b. District Memorial Hospital (1 p.)
c. Records of Dr. John M. Roberts (7 pp.)
d. Records of Dr. Stephen R. Shaffer (6 pp.)
e. Sylva Orthopaedic Associates (6 pp.)
f. Tallulah Health Center (6 pp.)
g. Thoms Rehabilitation Hospital (27 pp.)
 ***********
The Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is a forty-nine year old married female high school graduate living with her husband. Her grown son lives nearby.
2. On 19 April 1993, plaintiff sustained an injury by accident arising out of and in the course and scope of her employment with defendant-employer when she sustained a fractured left thumb while operating a salvage saw.
3. Plaintiff was evaluated by a nurse practitioner assigned to Dr. Patricia Johnson at the Tallulah Health Clinic in Robbinsville, where x-rays revealed a fracture of the distal phalanx for which plaintiff was splinted and given pain pills. Plaintiff was released to return to work with a recommendation that she be given a lighter job to do until her thumb was better. Plaintiff missed no work as the result of her compensable injury.
4. When plaintiff returned to work on 20 April 1993, after her thumb fracture, she was placed on a new job as a turn-table operator at "rough-end". This new job required her to do a great deal of heavy lifting. In addition to working on the turn-table, plaintiff also operated a planer and a salvage saw. Plaintiff performed these jobs from 20 April 1993. Plaintiff reported having difficulty performing these jobs because of the heavy duty work involved.
5. On 27 April 1993, plaintiff was seen by Dr. Johnson at Tallulah Health Center for a re-examination of the left thumb. At that time, plaintiff's thumb was improving.
6. Plaintiff was next evaluated at the Tallulah Health Clinic in June 1993 some six weeks after her prior visits. She reported mild swelling of the left thumb with no complaints of left thumb pain. Thereafter, plaintiff continued to work on lifting heavy lumber at defendant-employer's.
7. Plaintiff presented to the Tallulah Health Center on 27 July, 7 September, 13 September, 18 November and 30 November 1993.
8. On 25 August 1993, plaintiff sustained a laceration to the palm of her left hand when she was cut on metal equipment while working at defendant-employer's place of business. Plaintiff was taken to District Memorial Hospital by defendant-employer's plant nurse, where she received sutures for the laceration and was released to return to work. Plaintiff again returned to work without missing time to the job which required her to lift heavy lumber.
9. Plaintiff continued to work for defendant-employer consistently from the date of injury until 25 or 26 October 1993. Then plaintiff voluntarily terminated her employment with defendant-employer because of the heavy lifting involved in her work.
10. On approximately 8 November 1993, plaintiff began work for Mundy's Lumber and Veneer as a clipper operator. As a clipper operator, plaintiff lifted and cut sheets of veneer between three to four feet long and up to seventy inches wide.
11. Plaintiff presented to Dr. Johnson at Tallulah Health Center on 20 December 1993. At that time, plaintiff was complaining of right hand pain, wrist pain, arm pain and left hand pain. These complaints of pain had persisted for the several weeks preceding the 20 December 1993 examination.
12. On 28 January 1994, plaintiff again presented to Dr. Johnson complaining of left thumb pain and swelling. At the examination, plaintiff reported using her hands a great deal at work and stated the pain resulted from her work.
13. On 3 February 1994, plaintiff was seen at the Tallulah Health Center for a re-examination, complaining of pain in her left thumb and left ring finger. At the time of the examination, plaintiff reported lifting veneer all day at work and attributed the pain to this work activity.
14. On 3 February 1994, plaintiff, of her own volition, ceased working at Mundy's Lumber and Veneer. She has not returned to work at any job for any employer since that time.
15. On 9 February 1994, plaintiff presented to Dr. Paul Pflueger, an orthopaedic surgeon. Dr. Pflueger examined plaintiff. Plaintiff complained of pain and swelling in the area of the left thumb. Dr. Pflueger referred plaintiff to Thoms Rehabilitation Hospital for physical therapy.
16. Plaintiff gave a history to Dr. Pflueger of a fracture in her left thumb and continuing pain at the tip and base of her thumb. She reported swelling of the entire left hand and held her hand in a protected position. X-rays showed a healed fracture of the tuft of the distal phalanx of the left thumb. However, due to plaintiff's increasing sensitivity in her left hand, Dr. Pflueger gave her a note taking her out of work as of 9 February 1994 and recommended physical therapy.
17. On 3 March 1994, plaintiff was examined at Thoms Rehabilitation Hospital. Dr. Freeman Broadwell examined plaintiff and diagnosed her as suffering from fibromyalgia. According to Dr. Broadwell, the onset of fibromyalgia developed as a secondary symptom resulting from plaintiff's altered body mechanics and lifting as she avoided using her thumb and hand following the fracture of her left thumb on 19 April 1993.
18. Plaintiff again presented to Dr. Pflueger on 23 March 1994, complaining of generalized problems including pain on the left side, left rib cage, left arm and left sided neck pain and tenderness. According to Dr. Pflueger, plaintiff's symptoms could have been triggered by her fractured thumb.
19. On 16 February 1994, the parties entered into a Form 26 Agreement for Compensation for Disability, whereby defendants agreed to reinstate plaintiff's temporary total disability benefits effective 3 February 1994 and continuing for necessary weeks.
20. On 12 April 1994, plaintiff was seen at Tallulah Health Center. At the time of the examination, Dr. Johnson noted the diagnosis of fibromyalgia made at Thoms Rehabilitation Hospital. Plaintiff complained of pain running from the left hand, up the elbow and into the left shoulder across to the right shoulder on 12 April 1994.
21. On 18 April 1994, Dr. Pflueger advised defendant-employer of functional work limitations applicable to plaintiff's condition. She had reached maximum medical improvement. Plaintiff was restricted to lifting no more than ten pounds and doing no repetitive motion which involved her left upper extremity.
22. On 31 May 1994, defendant-employer notified plaintiff that a job was available within the limitations imposed by Dr. Pflueger. The job proposed was a Finisher Helper #2 which required hand sanding, glaze wiping, filler wiping, stripping, wet brushing and other related duties in the finishing department. Plaintiff refused to attempt the proffered employment. Her refusal was justified.
23. After plaintiff's justifiably refused to return to work, defendants filed several Form 24 Applications, requesting authorization to terminate plaintiff's benefits. An Order was filed on 1 December 1994, permitting defendants to suspend payment of compensation from 1 December 1994 until plaintiff attempted a trial return to work.
24. Subsequent to the Form 24 approval in December, six months after the job as Finisher was offered to plaintiff by defendant-employer, she contacted Mundy's Lumber and was informed no suitable work was available at that time.
25. Plaintiff was capable of working within her restrictions when she voluntarily terminated her employment with Defendant-Employer in October 1993 and began working for Mundy's Lumber and Veneer. She was not taken out of work until she was given a note by Dr. Pflueger subsequent to her departure from Mundy's Lumber and Veneer which occurred on 3 February 1994.
26. Subsequent to the Form 24 approval, it is determined the job of Finish Helper #2 as described in Plaintiff's exhibit No. 1 is not suitable work within the limitations outlined by Dr. Pflueger and Dr. Broadwell. Plaintiff was justified in refusing to attempt the same. Accordingly, the Form 24 was improvently approved and Plaintiff's benefits should have continued from 1 December 1994.
27. On 27 June 1994, plaintiff was examined by Dr. Johnson. At the time of the examination, plaintiff complained of stomach pain, fatigue, constant headache, irritable bowel syndrome and feeling run down.
28. On 8 September 1994, plaintiff was seen by Dr. Stephen R. Shaffer for an independent medical evaluation. Dr. Shaffer found plaintiff to have complete range of motion in her cervical spine, elbows, wrists, thumbs and fingers. Based upon plaintiff's history of injury and illness, the physical exam, and a review of all of the relevant medical records, Dr. Shaffer did not relate the onset of neck and left sided pain in plaintiff to her 19 April 1993 injury.
29. Dr. Johnson, Dr. Pflueger and Dr. Broadwell did, however relate plaintiff's fibromyalgia to her work-related injury. Plaintiff's continued pain in her left thumb, as well as use of a splint, caused her to alter her posture in order to protect her thumb and to put more strain on her arms and shoulders. The Full Commission gives greater weight to the testimony of Drs. Johnson, Pflueger and Broadwell, plaintiff's actual treating physicians, who all concur, than to the testimony of Dr. Shaffer, defendant-employer's expert witness, regarding the cause of plaintiff's discomfort in her left hand, arms and shoulders.
30. As a result of plaintiff's compensable injury of a thumb fracture sustained on 19 April 1993, plaintiff has had continuing pain and swelling in her left hand. As a result of the alteration of her lifting and working patterns necessitated by her injury to her thumb and as noted by both Dr. Broadwell and Dr. Johnson, plaintiff developed fibromyalgia in her left arm and shoulder as a direct and proximate result of her compensable injury.
31. Plaintiff is suffering from depression and anxiety. Her history and testimony regarding past depressive episodes are not consistent. Dr. Broadwell attributes plaintiff's anxiety to a number of factors including perceived harassment at work, financial concerns and the general stress of life. Plaintiff reported to Dr. Broadwell and to Dr. Duncan Curry a psychologist in 1994, that she had been treated with Valium as a result of severe psychosocial stressors in the past. Plaintiff denied this history to physicians at a later date. Plaintiff was being given medications at Thoms where Dr. Broadwell was on staff. Dr. Pflueger, an orthopaedist, did not treat plaintiff for depression. The Full Commission gives greater weight to the testimony of Dr. Broadwell on the issue of the source of plaintiff's depression and anxiety. Plaintiff's depression was not caused solely or predominantly by her accident in 1993, but occurred periodically in her life from a multiplicity of causes.
32. As a result of her left thumb fracture and fibromyalgia, plaintiff has been unable to work since 1 December 1994 and continuing. Defendants have not offered suitable work, nor made any attempts at vocational placement for which Plaintiff could have cooperated.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to total temporary disability benefits in the amount of $160.01 per week beginning 1 December 1994 and continuing until such time as Plaintiff is no longer disabled or until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
2. Plaintiff was justified in refusing to attempt the job of Finisher Helper #2 as offered by defendant-employer. N.C. Gen. Stat. § 97-42.
3. Defendant is required to pay for all medical treatment received by Plaintiff concerning this claim. This treatment includes services rendered by Dr. Johnson, Dr. Pflueger and Dr. Broadwell. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to Plaintiff total temporary disability benefits in the amount of $160.01 per week beginning 1 December 1994 and continuing until such time as Plaintiff is no longer disabled or until further order of the Industrial Commission.
2. Plaintiff was justified in refusing to attempt the job of Finisher Helper #2 as offered by defendant-employer.
3. Defendant shall pay for all medical treatment received by Plaintiff concerning this claim. This treatment includes services rendered by Dr. Johnson, Dr. Pflueger and Dr. Broadwell.
4. An attorney fee of 25% of this award is approved for Plaintiff's counsel to be paid directly to him.
5. Defendant shall pay the costs.
This the ___ day of August 1998.
 S/ ________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________________ RENÉE C. RIGGSBEE COMMISSIONER
S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER